UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KERRY L HURWITZ and<br>REBECCA L HURWITZ,<br><br>    Plaintiffs,<br><br>v.<br><br>NEWTON PUBLIC SCHOOLS,<br>MATTHEW B HILLS in his individual and<br>official capacities, DAVID FLEISHMAN<br>in his individual and official capacities,<br>GREGORY B REIBMAN, GATEHOUSE<br>MEDIA MASSACHUSETTS I, INC.,<br>d/b/a GATEHOUSE MEDIA NEW<br>ENGLAND, GATEHOUSE MEDIA, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 17-10231-LTS |

ORDER ON MOTIONS TO DISMISS

July 14, 2017

SOROKIN, J.

Plaintiffs Kerry and Rebecca Hurwitz's Complaint alleges eight counts, seven of which are under state law, against various groupings of the following defendants: Newton Public Schools (NPS); Matthew Hills, Chair of the Newton School Committee; David Fleishman, Superintendent of Newton Public Schools; Gail Spector, co-publisher of the village14 blog; Gregory Reibman, co-publisher of the village14 blog; GateHouse Media Massachusetts; and GateHouse Media LLC.

On May 16, 2017, the Court ordered a status conference with the parties. Doc. No. 44. The Court was concerned that it lacked subject matter jurisdiction in this case and held the conference to expressly raise the issue with the parties. At the status conference on May 23,

2017, the Court extensively reviewed the issues with counsel and ordered Plaintiffs' counsel to file a status report about whether Plaintiffs would be dismissing the § 1983 claim. Doc. No. 46. On June 14, 2017, Plaintiffs informed the Court that they would not be dismissing their First Amendment claims. Doc. No. 50. Plaintiffs subsequently filed their oppositions to the various motions to dismiss.

Plaintiffs' Complaint is extensive and the Court will summarize only those facts relevant to the 42 U.S.C. § 1983 claim.

Rebecca attended Newton North High School. Doc. No. 1-1 at 2. Kerry is her mother. Id. Kerry became concerned that materials used in freshman and sophomore world history classes contained inaccurate and anti-Semitic materials after reading about NPS's removal of a chapter of the *Arab World Studies Notebook* from the curriculum in November 2011. Id. at 3. Kerry reviewed Rebecca's school materials following the removal of the chapter and found "extensive inaccuracies and biases." Id. Kerry organized a parent group in early 2012 which worked "to ensure that class material in Newton and other public schools is accurate and non-biased." Id. at 3–4. Kerry and the parent group challenged a number of class materials over the course of the next year. Id. at 4. At some point in 2012, Fleishman and Jonathon Bassett, the chair of the Newton North history department, "told Kerry that she could not discuss class materials or what was learned in class with her child's teachers." Id.

Kerry filed a Statement of Concern with the Massachusetts Department of Elementary and Secondary Education (DESE) on May 28, 2013, alleging that NPS failed to adequately review class material. Id. at 5. DESE told Kerry that her and Rebecca's names would remain confidential. Id. Kerry had concerns for the family's personal safety because of past issues related to an editorial Kerry had published. Id. at 5–6.  The Complaint contains no allegations

whatsoever that any defendant at any time either (a) physically harmed either Plaintiff or (b) attempted or threatened to do so. In addition, the Complaint contains no allegations whatsoever that any other person committed any such conduct related to this incident. Plaintiffs' fears arose from their past experience of being threatened in 2010 after Kerry published an editorial. Doc. No. 1-1 at 5–6. There is no allegation that any Defendant had anything to do with that alleged threat.

DESE ultimately declined to take action on the Statement of Concern as explained in a letter dated September 17, 2013 sent to Plaintiffs. Id. at 6. The letter was sent to Fleishman as well. Id. The letter lists both Kerry and Rebecca's names and their home address. Id. at 25.

On October 22, 2013, "large advertisements criticizing the NPS, Fleishman, and Hills were published in five Boston-area newspapers." Id. at 7. The advertisements were placed by a group that Plaintiffs have no association with. Id. at 8. "Within 24 hours after the advertisements were published, Fleishman distributed an unredacted copy of the Letter to all 13 School Committee members . . . ." Id. at 8. "One or two days after receiving the unredacted Letter from Fleishman, Hills sent it to at least two media entities—the Tab and Village14. Hills admitted sending the Letter at a videotaped School Committee meeting on October 28, 2013." Id. at 9. According to Plaintiffs, "[t]he timing of Hills' transmittal of the Letter, as well as other acts and statements by him, indicates that may have [sic] made the transmittal for the advertisements, even though Kerry had nothing to do with them." Id. Plaintiffs claim that the publication of the unredacted letter containing Rebecca's name and the Hurwitz family's home address caused them to suffer damages.

This suit was initially filed in Middlesex Superior Court and Defendants removed to this Court citing federal question jurisdiction. Doc. No. 1. All Defendants have moved to dismiss in

six separate Motions to Dismiss. Plaintiffs' only federal claim, and thus the sole basis of federal question jurisdiction in this Court, is Count IV which alleges a violation of 42 U.S.C. § 1983 against Hills, Fleishman, and NPS. Plaintiffs allege that "Hills, Fleishman and NPS, persons acting under color of state law, deprived plaintiffs of secured rights, including but not limited to her right to privacy and First Amendment right to free speech, causing injury to plaintiffs, who avail themselves to 41 U.S.C. § 1983—'Civil action for deprivation of rights.' The actions of Hills and NPS were retaliatory in nature." Doc. No. 1-1 at 20.

None of Plaintiffs' various filings describe the federal right to privacy they assert the defendants named in this Count violated. The constitutional right to privacy encompasses two categories of interests; "[o]ne is the individual interest in avoiding disclosure of personal matters. And another is the interest in independence in making certain kinds of important decisions." Whalen v. Row, 429 U.S. 589, 599–600 (1977) (footnote omitted). The Court sees no meritorious argument that any right to privacy encompassed here falls into the latter category. As to the interest in avoiding disclosure of personal matters, "[e]ven if the right of confidentiality has a range broader than that associated with the right to autonomy, that range has not extended beyond prohibiting profligate disclosure of medical, financial, and other intimately personal data." Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 183 (1st Cir. 1997) (citing Borucki v. Ryan, 827 F.3d 836, 841–42 (1st Cir. 1987) (citation omitted)). Plaintiffs' home address does not rise to the level of "intimately personal data" protected by the United States Constitution. See Borucki, 827 F.3d at 842 n.8 (noting that cases finding a right to privacy "implicate other protected rights as well, such as the autonomy branch of the privacy right, and first amendment rights").

Thus, the Court moves to Plaintiffs' First Amendment claims. Again, Plaintiffs' filings are not a model of clarity. Arguably, Plaintiffs' Complaint alleges a claim for deprivation of First Amendment rights against Hills, Fleishman, and NPS and alleges a claim for First Amendment retaliation against Hills and NPS.

As to Plaintiffs' claim for a deprivation of First Amendment rights, nowhere in the Complaint do the facts state such a claim. In the Complaint, Plaintiffs briefly allege that "[Fleishman's] restriction on speaking with teachers about the curriculum and class materials was an unlawful infringement on Kerry's First Amendment right of free speech and was done in retaliation for organizing and participating in meetings of parents and other residents regarding those topics, and for her role in the [*Arab World Studies*] *Notebook*'s removal." Doc. No. 1-1 at 5. Plaintiffs have failed: to support this theory with sufficient factual allegations in the Complaint; or, in their Oppositions, either to explain this theory or present it in any way. To show a deprivation of their First Amendment rights, Plaintiffs "must allege that [their] speech was in fact chilled or intimidated by" Defendants' actions. Hague v. Mass. Dep't of Elementary & Secondary Educ., No. 10-30138-DJC, 2011 WL 4073000, at *3 (alteration in original) (quoting Sullivan v. Carrick, 888 F.3d 1, 4 (1st Cir. 1989)). This Plaintiffs have not alleged. Ironically though, they have alleged facts to the contrary, that they persisted in speaking out by filing the Statement of Concern. See Doc. No. 1-1 at 5.

In any event, parents do not have a First Amendment right to unfettered access to their children's teachers. A public high school is generally not a public forum; rather, public high school classrooms are generally designated as nonpublic fora. See Peck v. Upshur Cnty. Bd. of Educ., 155 F.3d 274, 292–93 (4th Cir. 1998) (finding that public schools are nonpublic fora); Muller by Muller v. Jefferson Lighthouse School, 98 F.3d 1530, 1539 (7th Cir. 1996) (finding

5

that an elementary school is a nonpublic forum) (citing <u>Hazelwood Sch. Dist. v. Kuhlmeier</u>, 484 U.S. 260 (1988)); <u>Hedges v. Wauconda Comm'y Unit Sch. Dist. No. 118</u>, 9 F.3d 1295, 1302 (7th Cir. 1993) (finding that a junior high school is a nonpublic forum); <u>Miles v. Denver Pub. Schs.</u>, 944 F.2d 773, 776 (10th Cir. 1991) (finding that a ninth grade classroom is a nonpublic forum). For a nonpublic forum, restrictions "must still be both viewpoint neutral and reasonable to be constitutional." <u>Del Gallo v. Parent</u>, 557 F.3d 58, 72 (1st Cir. 2009). This "is not a particularly high hurdle," <u>Ridley v. Mass. Bay Transit Auth.</u>, 390 F.3d 65, 90 (1st Cir. 2004), and any restriction "need not be the most reasonable or the only reasonable limitation," <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 808 (1985). Fleishman's restriction did not prevent Kerry from speaking to school officials but instead restricted the time and place where Kerry was permitted to discuss the curriculum. <u>See</u> Doc. No. 1-1 at 4–5. While that is not a content-neutral restriction, the law does not require content-neutral restrictions in nonpublic fora. <u>See Am. Freedom Def. Initiative v. Mass. Bay Transit Auth.</u>, 781 F.3d 571, 578 (1st Cir. 2015). Because Fleishman's restriction was viewpoint neutral and the Court finds, given the factual allegations of the Complaint with all reasonable inferences drawn in Plaintiffs' favor, Plaintiffs have failed to allege plausibly that the restriction was not reasonable under the circumstances alleged. Thus, Plaintiffs have failed to make out a First Amendment claim.

      To make out a First Amendment retaliation claim, "the plaintiff must show that his conduct was in fact constitutionally protected. Then, he must adduce proof of a causal connection between the allegedly protected speech and the allegedly retaliatory response. Causation is established by showing that the plaintiff's conduct was a substantial or motivating factor in bringing about the allegedly retaliatory action." <u>Goldstein v. Galvin</u>, 719 F.3d 16, 30 (1st Cir. 2013) (citations and quotation marks omitted). Plaintiffs here allege that "Hills' and

NPS' transmittal of the Letter to the media were or may have been in retaliation for plaintiffs' and others' exercise of their First Amendment rights." Doc. No. 40 at 11. Clearly, Plaintiffs have no claim for retaliation against Hills and NPS if they were reacting to the actions of others. In that case, Plaintiffs' actions are not "a substantial or motivating factor in bringing about the alleged retaliatory action"; rather, they are no factor at all. As to Plaintiffs' allegation that the actions were based on their own conduct, the facts alleged in that Complaint fail to bear out the allegation. Plaintiffs' Complaint alleges both that the DESE letter was sent to the media primarily because of the ad placed in the newspaper and that Plaintiff had nothing to do with publication of the ad. Plaintiffs claim that "The NPS took no action with respect to the Letter until large advertisements criticizing the NPS, Fleishman, and Hills were published in five Boston-area newspapers on or about October 22, 2013," Doc. No. 1-1 at 7, and that "Within 24 hours after the advertisements were published, Fleishman distributed an unredacted copy of the Letter to all 13 School Committee members, including Newton Mayor Setti Warren . . . ." Id. at 8. Plaintiffs allege that "One or two days after receiving the unredacted letter from Fleishman, Hills sent it to at least two media entities" and that the timing "as well as other acts and statements by him, indicates that may have [sic] made the transmittal to retaliate for the advertisements even though Kerry had nothing to do with them." Id. at 9. Plaintiffs' argument rests the retaliation claim on the timing between the publication of the ad and the transmittal of the letter by Fleishman to the school committee and by Hills to the media. See Doc. No. 40 at 4 ("The timing of Fleishmans' and Hills' unauthorized transmittals of the Letter indicates that their response was retaliatory in nature."). Plaintiffs' Complaint alleges that the substantial or motivating factor that caused the allegedly retaliatory conduct was the publication of the ads.

Because the Complaint affirmatively alleges that Plaintiffs' protected activity did <u>not</u> cause the retaliatory actions, the claim fails.

Plaintiffs also obliquely state that "Retaliation by a government entity for objecting to anti-Israel and/or anti-semitic class material constitutes a violation of civil rights pursuant to the U.S. and Massachusetts Constitutions." Doc. No. 1-1 at 9. To the extent Plaintiffs are claiming a retaliation claim based on the restriction on Kerry speaking to teachers, the claim fails. Plaintiffs' alleged a retaliation claim only against Hills and NPS. <u>See</u> Doc. No. 1-1 at 20. Plaintiffs' Complaint contains no allegations asserting that Hills had a role, in any way, in the decision to restrict Kerry's ability to speak to teachers. Thus, at most, Plaintiffs alleged this claim against only NPS.  The doctrine of respondeat superior has no application in § 1983 claims. <u>Salvadir v. Racine</u>, 818 F.3d 14, 18 (1st Cir. 2016). Rather, to hold NPS liable, Plaintiffs must show that "execution of [NPS's] policy or custom . . . inflicts the injury." <u>Kelley v. LaForce</u>, 288 F.3d 1, 9 (1st Cir. 2002) (second alteration in original) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). Plaintiffs have not alleged a policy or custom of restricting parents' access to teachers when parents complain about course materials nor have they alleged a policy or practice by NPS of retaliating against such parents. Thus, the claim fails.

The Motions to Dismiss, Doc. Nos. 18, 37, are ALLOWED as to Count IV. There are no remaining claims over which this Court has original jurisdiction. Thus, in accordance with 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims. The case is REMANDED to the state court. The Court suggests that the parties file a joint status report advising the state court of the status of all pending motions as well as the

status of each claim in light of this ruling and Plaintiffs assent or non-opposition to the motions to dismiss certain claim(s).

                                                                     SO ORDERED.

                                             /s/ Leo T. Sorokin
                                            Leo T. Sorokin
                                            United States District Judge